932 F.2d 1330
 UNITED STATES of America, Plaintiff-Appellee,
v.
Theodore Albert GEYLER, Defendant-Appellant.
 No. 89-10162.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 17, 1990.
Decided May 13, 1991.
 
 Robert J. Hirsh, Brian I. Rademacher, Hirsh, Sherick & Murphy, Tucson, Ariz., for defendant-appellant.
 Gary Clifford Korn, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before LIVELY,* FLETCHER and REINHARDT, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 
 1
 Theodore Albert Geyler appeals his conviction for possession of firearms by a convicted felon on the ground that the conviction which served as the predicate offense is not a "conviction" within the meaning of the federal firearms statute. We reverse.
 
 I.
 
 2
 In 1977, Geyler was convicted in federal district court of the offense of misprision of a felony, which carries an authorized punishment of imprisonment for a term exceeding one year. See 18 U.S.C. Sec. 4. As a result, he lost his civil rights under Arizona law. See Ariz.Rev.Stat.Ann. Sec. 13-904. Geyler received an absolute discharge from imprisonment by the end of 1979. Upon his absolute discharge, Arizona law granted him an automatic restoration of civil rights. See id. Sec. 13-912 (1978).[1]
 
 
 3
 In 1987, several firearms were seized from Geyler's house. The parties stipulated that four of the firearms had travelled in interstate commerce and that Geyler knew of their presence in his house. He was charged in a two-count indictment with possession of firearms by a convicted felon, in violation of 18 U.S.C. Secs. 922(g)(1), 924(a), and possession of an unregistered sawed-off shotgun, in violation of 26 U.S.C. Secs. 5845(e), 5861(d), 5871. The district court convicted him on the first count but not on the second.
 
 
 4
 Geyler argues that the district court erred in finding him guilty of violating the statute which prohibits possession of firearms by a convicted felon. That statute makes it unlawful for any person "who has been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year ... to ship or transport any firearm or ammunition in interstate or foreign commerce." 18 U.S.C. Sec. 922(g)(1). The term "crime punishable by imprisonment for a term exceeding one year" is defined in relevant part as follows:
 
 
 5
 What constitutes a conviction of [a crime punishable by imprisonment for a term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.
 
 
 6
 18 U.S.C. Sec. 921(a)(20).
 
 
 7
 According to Geyler, because Arizona law restored his civil rights upon his absolute discharge from imprisonment on the misprision of a felony offense, that offense no longer qualifies as a "conviction" pursuant to Sec. 921(a)(20). The government responds that in light of the first sentence of Sec. 921(a)(20), which refers to the law of the prosecuting jurisdiction, only action taken by the federal government, and not action taken by the states, can serve to nullify the effect of a prior federal felony conviction. We review questions of statutory interpretation de novo. United States v. Valencia-Roldan, 893 F.2d 1080, 1082 (9th Cir.1990).
 
 II.
 
 8
 The plain language of Sec. 921(a)(20) provides that for purposes of prohibitions relating to the possession of firearms, any conviction shall be considered a non-conviction in the event of an expungement or a setting aside of the conviction or a pardon or a restoration of civil rights. The use of the connector "or" makes clear that each method is a distinct and independent procedure. Here we are concerned solely with the restoration of civil rights--a procedure that differs from the others both in its primary goal and in its jurisdictional reach.
 
 
 9
 The purpose of an expungement, a setting aside of a conviction, and a pardon is to nullify the conviction itself.[2] In the case of a restoration of civil rights, however, the sole objective is to restore the individual's rights, and the conviction is not affected--except, of course, in the rare case such as the present one, in which a separate statute provides that nullification of the conviction for a particular purpose shall be a consequence of a restoration of rights.[3] The specific reference in Sec. 921(a)(20) to the restoration procedure indicates that Congress intended to recognize that independent process as a separate basis for treating a conviction as a non-conviction.[4] Moreover, the inclusion in the statute of the restoration procedure could not have been accidental. The procedure is widely used, and Congress was certainly aware of it. See Special Project, The Collateral Consequences of a Criminal Conviction, Y23 Vand.L.Rev. 929, 1143 (1970) [hereinafter Special Project] (all fifty states have provisions for the restoration of civil rights).
 
 
 10
 As a distinct and independent procedure, the restoration of civil rights is governed by jurisdictional rules that differ from those applicable to the other forms of relief. Both state and federal law contain provisions for the other three procedures: expungement, setting aside of a conviction, and pardon. There is no jurisdictional overlap with respect to these provisions; for example, the President has no authority to punish state felons, and the governors have no authority to pardon federal felons. See generally Special Project, supra, at 1143-47. For these methods of nullifying a conviction, only state actions can nullify state convictions and only federal actions can nullify federal convictions.
 
 
 11
 The restoration of civil rights, however, is an entirely different matter. State law deprives felons, both state and federal, of their civil rights initially. See, e.g., Ariz.Rev.Stat.Ann. Sec. 13-904 (1989) ("A conviction for a felony suspends the following civil rights of the person sentenced....").[5] And only the states provide a procedure whereby following completion of a felon's sentence his conviction remains intact but his civil rights may be restored. Unlike any of the other procedures listed in Sec. 921(a)(20), a state's restoration of civil rights is available to all felons. See, e.g., Ariz.Rev.Stat. Sec. 13-912 (1978).
 
 
 12
 Because there is no federal procedure for restoring civil rights to a federal felon, Congress could not have expected that the federal government would perform this function. The reference in Sec. 921(a)(20) to the restoration of civil rights must be to the state procedure.
 
 
 13
 Conceivably, when enacting the federal firearms laws, Congress could have limited the benefits of a state's restoration of rights to state felons only. The plain language of the statute, however, makes it evident that Congress did not do so. Pursuant to Sec. 921(a)(20), "[a]ny conviction " shall be nullified as a predicate offense in the event of a restoration of civil rights. If the government were correct that a state restoration of rights cannot nullify a federal conviction for purposes of the firearms laws, it would then not be true that "[a]ny conviction ... for which a person ... has had civil rights restored shall not be considered a conviction for purposes of this chapter...." (Emphasis added.) Instead, the statutory clause would apply only to state convictions, not to "any" conviction.
 
 
 14
 The only reading of Sec. 921(a)(20) that gives full meaning to its plain language is that any conviction effectively becomes a non-conviction if a felon's civil rights are restored--i.e., if a state has restored the felon's rights. See United States v. Dangdee, 616 F.2d 1118 (9th Cir.1980) (the phrase "any passport" in 18 U.S.C. Sec. 1543 refers to passports issued by foreign governments as well as those issued by the United States); United States v. Wilson, 591 F.2d 546 (9th Cir.1979) (the phrase "any official" in 18 U.S.C. Sec. 3612 refers to state as well as federal officials). Thus, according to the plain language, a federal felon whose civil rights are restored pursuant to state law, like a state felon whose rights are so restored, is no longer considered as having been "convicted" for purposes of the federal firearms laws.
 
 
 15
 The United States District Court for the District of Minnesota reached the same conclusion when it recently confronted the identical issue. In holding that a state's restoration of the civil rights of a federal felon removed the federal felony conviction as a predicate offense for the federal firearms laws, the court observed:It is the state, not the federal government, that defines and restores a person's civil rights, even in relationship to the federal government. The United States Constitution does not bar convicts from holding federal office. The right to vote, even in federal elections, is set by the states. The electors of both senators and representatives are determined by state law. U.S. Const. art. 1, Sec. 2, cl. 1; U.S. Const. amend. 17. The right of a former convict to serve on federal juries depends on whether state law has restored civil rights. 28 U.S.C. Sec. 1865(b)(5); United States v. Hefner, 842 F.2d 731 (4th Cir.1988).
 
 
 16
 United States v. Edwards, 745 F.Supp. 1477, 1479 (D.Minn.1990). The court concluded, "While the law of the jurisdiction where the proceeding is held determines what is a conviction and whether it has been set aside, expunged, or subject to a pardon, the law of the state where a person is a citizen governs that person's civil rights." Id.[6]
 
 
 17
 In this case, the meaning of the statutory language is clear. "Any conviction ... for which a person ... has had civil rights restored" means precisely that. Pursuant to the plain language of Sec. 921(a)(20), a state's restoration of civil rights to a person eliminates the underlying conviction as a predicate offense for purposes of the federal firearms laws, whether the conviction was for a state or federal offense.
 
 III.
 
 18
 The government's argument to the contrary relies on an unrelated reference in Sec. 921(a)(20) to the law of the prosecuting jurisdiction. The definitional provision of Sec. 921(a)(20) contains two sentences. The first sentence states: "What constitutes a conviction of [a crime punishable by imprisonment for a term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." The meaning of this sentence is not in dispute: federal law determines the existence of a federal conviction, and state law determines the existence of a state conviction. It is the second sentence, however, that is the focus of this case. That sentence reads: "Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." The government contends that the reference in the first sentence to the law of the prosecuting jurisdiction also applies to the unrelated clause in the second sentence regarding the restoration of civil rights.
 
 
 19
 Unfortunately for the government, nothing in the language of the statute supports this wishful suggestion and nothing contravenes the plain language we have previously identified. The two sentences relied on by the government pertain to two entirely different sets of circumstances. The first sentence addresses the question of what constitutes a conviction; this is, quite simply, answered by the law of the prosecuting jurisdiction, and Congress made it plain that it desired that result.[7] The second sentence governs the effect of post-conviction events. Under the provisions of the second sentence, once the law of the prosecuting jurisdiction has confirmed that a conviction exists, there are four ways in which the effects of the conviction may be avoided for purposes of the federal firearms laws. These four methods, as we have noted supra, are: expungement, setting aside of a conviction, pardon, or a restoration of civil rights. As we have explained, the jurisdictional reach of federal and state law is not the same with respect to each of these procedures. Specifically, the restoration of rights, unlike the other procedures, is carried out only by the states, and it is the only procedure under which one jurisdiction may grant relief to persons convicted in the other.
 
 IV.
 
 20
 When statutory language is clear, even under the most relaxed of standards "we look to the legislative history to determine only whether there is 'clearly expressed legislative intention' contrary to that language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses." INS v. Cardoza-Fonseca, 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1986).[8] Here, the legislative history manifestly fails to establish the "clearly expressed legislative intention" necessary to the adoption of a contrary construction. In fact, a close reading of the legislative history discloses that Congress quite likely never gave any specific thought to the problem of a state restoring a federal felon's civil rights when it enacted the federal firearms statute.
 
 
 21
 Section 921(a)(20) was amended in response to Dickerson v. New Banner Institute, Inc., 461 U.S. 911, 103 S.Ct. 1887, 76 L.Ed.2d 815 (1983). That case held that a state expunction of a state conviction did not render the conviction a nullity for purposes of the federal firearms laws. Congress reacted by passing legislation that expressly removed a conviction as a predicate offense if the conviction were expunged or set aside, or if the felon were pardoned or granted a restoration of his civil rights.
 
 
 22
 In passing this legislation, Congress focused on the anomaly of having a state felon's conviction nullified for purposes of state law but not for purposes of federal firearms law. Nowhere in the legislative history did anyone refer to federal felons. The complete absence of any attention to federal convictions suggests that Congress was intent on overruling Dickerson and, as is not uncommon in these days of complex legislation and overworked legislators, may have failed to consider specifically other related issues that would be directly affected by the passage of the proposed legislation. At no point does the legislative history evidence any concern regarding the treatment of federal felonies, let alone any intention to exclude persons convicted of federal crimes from the benefits of the restoration of rights provision.
 
 
 23
 Congress's failure to discuss the issue of federal felonies during the congressional debates falls far short of the "clearly expressed legislative intention" that we must find before we may override the plain language of a statute. The legislative history is clearly inadequate to overcome the statute's plain meaning.
 
 V.
 
 24
 The only possible remaining basis for refusing to give the statutory language its plain meaning would be if the rule we would establish would be so absurd or harmful to governmental or societal interests as to warrant adopting a conflicting construction. See United States v. Missouri Pac. RR, 278 U.S. 269, 278, 49 S.Ct. 133, 136, 73 L.Ed. 322 (1929). Admittedly, the rule giving effect to a state's restoration of a federal felon's rights is more cumbersome to administer than one in which only the federal government could take action affecting federal convictions. However, the defendant's interpretation has advantages as well as disadvantages. Among the former is the fact that his interpretation is consistent with the congressional goals and objectives that underlie the statute.[9]
 
 
 25
 Congress was aware of the policy implications of resting federal firearms law on the varying laws of fifty states. The Bureau of Alcohol, Tobacco and Firearms clearly warned Congress that the first sentence of Sec. 921(a)(20) "would require the Bureau to examine the peculiar laws of each State to determine whether a person is convicted for Federal purposes." Assessment by the Bureau of Alcohol, Tobacco and Firearms: S.49, The "Firearms Owners Protection Act" (Feb. 10, 1986), reprinted in 1986 U.S.Code Cong. & Admin.News 1327, 1342, 1346. Despite this warning, Congress enacted the provision.
 
 
 26
 As the court in Edwards recently pointed out, "it is by no means anomalous in our complicated federal system for persons who have acted similarly to be treated differently in federal criminal cases because of the application of differing state laws." 745 F.Supp. at 1479 (citing Major Crimes Act, 18 U.S.C. Sec. 1153; Assimilative Crimes Act, 18 U.S.C. Sec. 13). Although the system may be cumbersome, it is by no means so "absurd or impracticable" that we may override plain statutory language in order to reach a different result. See Missouri Pac. RR, 278 U.S. at 278, 49 S.Ct. at 136. Thus, even a consideration of policy implications could not justify adopting a contrary construction.
 
 VI.
 
 27
 In order to reach the result urged by the government, we would have to ignore another cardinal rule of statutory construction. The rule of lenity requires that "where there is ambiguity in a criminal statute, doubts are to be resolved in favor of the defendant." United States v. Bass, 404 U.S. 336, 348, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971). Even if the language of Sec. 921(a)(20) did not plainly require us to reverse, the statutory reference to "any conviction" would render the enactment ambiguous, at the least.
 
 CONCLUSION
 
 28
 The plain statutory language requires the reversal of Geyler's conviction for possession of firearms by a convicted felon. Neither the legislative history nor policy considerations justifies our overriding that language and reaching the opposite result. Accordingly, we reverse Geyler's conviction.
 
 
 29
 REVERSED.
 
 FLETCHER, Circuit Judge, dissenting:
 
 30
 I respectfully dissent. As the majority recognizes, supra, at 1335, Congress amended section 921(a)(20) in response to Dickerson v. New Banner Institute, Inc., 461 U.S. 911, 103 S.Ct. 1887, 76 L.Ed.2d 815 (1983), which denied any effect to state expunctions, pardons or civil rights restorations related to state convictions for purposes of the federal firearms laws. In my view--and the majority does not appear to disagree--Congress's purpose in passing the amendment was to enable states to determine the effect of their own convictions. The amendment was not intended to give states the ability to restore to federal felons rights impaired by federal convictions.
 
 
 31
 The majority's reading of the words "any conviction" as allowing states to determine the effect of federal convictions creates the Dickerson problem in reverse. While I do not believe that the first sentence of the amendment (specifying that what constitutes a "conviction" is to be determined in accordance with the law of the jurisdiction in which the proceedings were held) is dispositive of how to read the second sentence, as suggested by the government, I do think it must inform our reading of the words "any conviction."* Read in context, it is not plain to me that those words signify that a state's restoration of a federal felon's rights previously suspended by the state determines the vitality and significance of the federal conviction vis-a-vis federal firearms laws.
 
 
 32
 Where the language of the statute is ambiguous, as I believe it is here, we look to legislative history and Congress's broader purpose in passing the amendment. Both, in my view, support reading the amendment to mandate federal deference to states' treatment of their own convictions, but not state control over the consequences of federal convictions under the federal firearms laws.
 
 
 
 *
 Hon. Pierce Lively, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 [1]
 At the time in question, this statute read in its entirety: "Upon completion of the term of probation, or upon absolute discharge from imprisonment, and upon the completion of payment of any fine or restitution imposed, any person who has not previously been convicted of any other felony shall automatically be restored any civil rights which were lost or suspended by the conviction." Id
 On its face, this statute does not expressly apply to federal convictions. Indeed, "felony" is defined in Sec. 13-105(13) to include only state offenses. Nevertheless, in the context of chapter 9 of the Arizona Criminal Code, the term "felony" takes on a broader meaning. Were this not so, we would be faced with the anomaly of Arizona law permitting the restoration of civil rights to a two-time federal felon, see Secs. 13-909, -910, but not to a one-time federal felon, see Sec. 13-912. In order to avoid this incongruous result, we interpret "felony" in Sec. 13-912 to include federal as well as state offenses.
 
 
 [2]
 Those procedures may have the incidental effect of restoring civil rights. See Special Project, The Collateral Consequences of a Criminal Conviction, 23 Vand.L.Rev. 929, 1147 (1970). However, that is not their primary objective
 
 
 [3]
 A restoration of civil rights serves to obviate the use of a conviction for purposes of the federal firearms laws only because Congress has expressly so provided in the firearms statute. Ordinarily, a restoration of civil rights leaves the conviction intact for all purposes but enables the convicted felon to resume voting, serving on a jury, and engaging in other activities for which his rights had been revoked
 
 
 [4]
 A long line of precedents requires us to give meaning wherever possible to every word and clause when interpreting a statute. See Moskal v. United States, --- U.S. ----, 111 S.Ct. 461, 466, 112 L.Ed.2d 449 (1990); Hoffman v. Connecticut Dep't of Income Maintenance, 492 U.S. 96, 109 S.Ct. 2818, 2823, 106 L.Ed.2d 76 (1989); United States v. Menasche, 348 U.S. 528, 538-39, 75 S.Ct. 513, 519-20, 99 L.Ed. 615 (1955); Montclair v. Ramsdell, 107 U.S. 147, 152, 27 L.Ed. 431 (1883). For this reason, we cannot assume that a restoration of rights is subsumed in the other categories of post-conviction relief
 
 
 [5]
 Within the context of chapter 9 of the Arizona Criminal Code, the word "felony" encompasses both state and federal offenses. See supra note 1. That interpretation applies to Sec. 13-903, as Arizona could not "restore" rights that it had not revoked in the first place. Cf. State ex. inf. Peach v. Goins, 575 S.W.2d 175, 180 (Mo.1978) ("The majority of jurisdictions which have addressed the issue hold that a 'conviction' of a felony under federal law disqualifies a person from voting or holding public office in the state although he has not been 'convicted' in the state system.")
 
 
 [6]
 The statement in Edwards regarding the relation between federal and state law on the one hand and an individual's civil rights on the other is slightly overstated. In certain limited instances, federal law does affect the civil rights of convicted felons. Federal statutes prohibit persons convicted of specified crimes from holding federal office. See, e.g., 18 U.S.C. Sec. 2071(b) (whoever conceals, removes, or mutilates public records shall be disqualified from federal office). Federal law also requires persons convicted of specified offenses to forfeit public office. See, e.g., 18 U.S.C. Sec. 1905 (whoever discloses confidential information while holding federal office shall forfeit that office). Also, as we have noted, see supra note 2, federal law can reinstate a federal defendant's civil rights as an incidental by-product of a pardon, expungement, or setting aside of a conviction
 Presumably the states cannot restore the few civil rights that are taken away by the federal government. Nonetheless, the overwhelming majority of civil disabilities imposed upon the conviction of a felony--whether the conviction is state or federal--are imposed by state law. Moreover, the existence of a small number of federally imposed civil disabilities does not change the fact that federal and state law are not parallel regarding the restoration of rights. Although federal and state law each provides for pardons, expunctions, and the setting aside of a conviction, federal law does not provide a procedure whereby the federal government can simply restore civil rights without nullifying the conviction. State law, on the other hand, may do this for federal as well as state felons.
 
 
 [7]
 The sentence was enacted "to accommodate state reforms adopted since 1968, which permit dismissal of charges after a plea and successful completion of a probationary period, or which create 'open-ended' offenses, conviction for which may be treated as misdemeanor or felony at the option of the court." Federal Firearms Owners Protection Act, S.Rep. No. 583, 98th Cong., 2d Sess. 7 (1984)
 
 
 [8]
 The standard advocated by Justice Scalia in his concurring opinion is much stricter: "if the language of a statute is clear, that language must be given effect--at least in the absence of a patent absurdity." Id. at 452, 107 S.Ct. at 1223. (Scalia, J., concurring in the judgment); see also Fort Stewart Schools v. Federal Labor Relations Authority, --- U.S. ----, 110 S.Ct. 2043, 2046, 109 L.Ed.2d 659 (1990) (Scalia, J.) ("the court ... must give effect to the unambiguously expressed intent of Congress")
 
 
 [9]
 Under the government's interpretation it would be lawful under state law, but unlawful under federal law, for federal felons whose civil rights had been restored to carry firearms. Moreover, federal felons who had been convicted of non-violent crimes such as mail fraud or securities fraud would be forbidden to carry firearms while state felons who had been convicted of murder or assault with a deadly weapon would not. If Congress had intended to limit the types of felonies that could be overlooked for purposes of the federal firearms laws following a restoration of civil rights by the state, it seems far more likely that it would have based its distinctions on the nature of the crimes rather than on the jurisdictional bases of the convictions. In any event, there is no reason to believe that Congress would have wanted to accord greater benefits to state felons than to federal felons when state laws restore rights to both
 
 
 *
 " '[I]n expounding a statute, we [are] not ... guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.' " Massachusetts v. Morash, 490 U.S. 107, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989) (quoting Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987))