**UNITED STATES of America, Appellant,**

v.

**Joe Darryl EDWARDS, Appellee.**

**No. 90–5512.**

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1991.

Decided Oct. 10, 1991.

Richard G. Morgan, Minneapolis, Minn., argued, for appellant.

Andrea George, Minneapolis, Minn., argued (Daniel M. Scott, on the brief), for appellee.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and DUMBAULD,* Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

The United States appeals from the district court's[1] order acquitting Joe Darryl Edwards after a jury convicted Edwards of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) (1988). The district court held that there was no predicate felony to support the section 922(g) conviction, since Edwards' civil rights were restored by state statute when he completed his terms of imprisonment and parole for an earlier unregistered firearm conviction. The court held that 18 U.S.C. § 921(a)(20) (1988) exempted felons whose civil rights had been restored from the reach of the federal firearms laws. *United States v. Edwards,* 745 F.Supp. 1477 (D.Minn.1990). The government argues that no state statute can exempt a federal felon from the federal firearms laws, and that a federal statute, 18 U.S.C. § 925(c) (West Supp.1991), provides the exclusive method for restoring Edwards' firearms privileges. We affirm the judgment of the district court.

In 1986, Edwards pled guilty in the United States District Court for the District of Minnesota to possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) (1982). He served a prison sentence until November 4, 1988, and was released from parole supervision on January 22, 1989. In 1990, Edwards was indicted under 18 U.S.C. § 922(g)(1) for possession of a firearm after having been convicted of a crime punishable by more than one year impris-

---

\* The HONORABLE EDWARD DUMBAULD, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

onment, and a jury found him guilty of this offense. He then moved for acquittal, arguing that the 1986 federal conviction did not qualify as a predicate offense. He argued that his civil rights were restored when he had served his sentence and been discharged and that 18 U.S.C. § 921(a)(20) provided that a felon whose civil rights had been restored did not fall within the prohibition of section 922(g). The district court concluded that the Minnesota statute restored the civil rights of all discharged convicts who were citizens of Minnesota, including those who served federal sentences, whether or not the discharge order explicitly recited the fact of restoration. 745 F.Supp. at 1480.

The United States makes two arguments that Minnesota's restoration of civil rights statute should not apply to exempt a federal felon from the firearms laws. First, the government argues that the statute exempting felons whose civil rights have been restored, section 921(a)(20) (1988), does not include federal felons whose rights were restored by state law. Second, the government argues that another provision of the federal firearms laws, section § 925(c), provides the exclusive means by which federal felons may be exempted from the federal firearms laws.

After this case was submitted, the Ninth Circuit decided that a state's restoration of civil rights to a federal felon operated to exempt that felon from section 922(g). *United States v. Geyler*, 932 F.2d 1330 (9th Cir.1991). After conducting our own inquiry, we are convinced that the *Geyler* holding is correct.

Resolving the government's objections requires us to analyze the relationship between various federal and Minnesota stat-utes.[2] Edwards was convicted under section 922(g)(1), which prohibits possession of a firearm by anyone "who has been convicted in any court of, [sic] a crime punishable by imprisonment for a term exceeding one year," and which initially appears to include Edwards. However, section 921(a)(20) limits the class of people who fall within section 922(g)(1) by narrowing the definition of a felon:

What constitutes a conviction of ["a crime punishable by imprisonment for a term exceeding one year"] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. *Any conviction* which has been expunged, or set aside or *for which a person has* been pardoned or has *had civil rights restored shall not be considered a conviction for purposes of this chapter,* unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

(emphasis added).

A Minnesota statute purports to restore a felon's civil rights upon completion of his sentence. Minn.Stat. § 609.165 subds. 1 & 2 provide:[3]

Subdivision 1. When a person has been deprived of civil rights by reason of conviction of a crime and is thereafter discharged, such discharge shall restore the person to all civil rights and to full citizenship, with full right to vote and hold office, the same as if such conviction had not taken place, and the order of discharge shall so provide.

. . . .

Subd. 2. The discharge may be:

---

2. We dealt with these same statutes in *United States v. Traxel*, 914 F.2d 119 (8th Cir.1990) and *United States v. Davis*, 936 F.2d 352 (8th Cir. 1991), which involved the effect of Minn.Stat. § 609.165 (1990) on certain *state* felony convictions. In *Presley v. United States*, 851 F.2d 1052 (8th Cir.1988), we construed section 921(a)(20) in holding that certain Missouri statutes did not restore a felon's civil rights.

3. In certain cases this restoration statute specifically withholds the right to have a gun, but these provisions are not applicable to Edwards's case. Minn.Stat. § 609.165 subd. 1a limits the operation of subd. 1 by denying certain persons convicted of "crimes of violence" the right to bear firearms. Similarly, Minn.Stat. § 624.713 subd. 1(b) (1990) limits the firearms rights of persons convicted of crimes of violence. Edwards is not affected by these sections, since his underlying felony (possession of an unregistered firearm) was not listed as a crime of violence in the definitional statute. *See* Minn. Stat. § 624.712 subd. (5) (1990).

(1) By order of the court following stay of sentence or stay of execution of sentence; or

(2) Upon expiration of sentence.

Thus, fitting the federal and state statutes together, we see that section 921(a)(20) exempts from the firearms laws felons whose civil rights have been restored and Minn.Stat. § 609.165 subd. 1 purports to restore a felon's civil rights upon expiration of his sentence.[4] The plain language of these two statutes would thus exclude Edwards from the class of persons subject to section 922(g). *See Geyler*, 932 F.2d at 1334.

The government argues that the last sentence of section 921(a)(20), which deals with restoration of civil rights, cannot be read literally, for it only *explains* what was already said in the preceding sentence, to wit: "What constitutes a conviction ... shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." According to the government, despite the plain, unlimited language of section 921(a)(20) applying to "any conviction," only restoration of rights by the law the defendant was convicted under (here, federal law) serves to exempt a felon from section 922(g).

The government relies on legislative history to support its argument that the last sentence of section 921(a)(20) serves only to explain the preceding one. Of course, when the statutory language is clear, we ordinarily need not consult the legislative history. *United States v. Erickson Partnership*, 856 F.2d 1068, 1070 (8th Cir.1988). In this case, the statute is unambiguous and the legislative history does not reveal any "clearly expressed legislative intention," *id.* (citations omitted), contradicting the statutory language; thus, we have no warrant to apply legislative history to vary the plain statutory language.

Moreover, we see nothing in the legislative history that would in any way aid the government's position. While the legislative history does not specifically discuss the situation we have here (of a state restoration of rights law exempting a federal felon from section 922(g)), it does show that the last two sentences of section 921(a)(20) articulate two ideas, addressing two different problems.

The Senate Report for one of the predecessor bills to Pub.L. No. 99–308, 100 Stat. 449 (1986), which contains the relevant provisions in section 921(a)(20), illuminates the respective purposes of the two sentences. The sentence defining conviction "in accordance with the law of the jurisdiction in which the proceedings were held" was intended to permit the state courts to determine the consequence of state convictions that might be treated either as felonies or misdemeanors under state law at the option of the state court. S.Rep. No. 583, 98th Cong., 2d Sess. 7 (1984).

The last sentence of section 921(a)(20) was drafted to deal with a different problem. Before the enactment of that language, a felon might receive a state pardon, restoration of civil rights, or expunction telling him his disabilities as a felon had been lifted, but the federal courts had held that such actions by the state would not remove the person from the definition of felon under the federal firearms laws. S.Rep. No. 953 at 7 (citing *Thrall v. Wolfe*, 503 F.2d 313 (7th Cir.1974), *cert. denied*, 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975)). The last sentence of section 921(a)(20) was drafted to correct that problem.

Therefore, the first sentence in question has to do with the effect of state convictions and the later sentence has to do with the effect of state pardons, restorations of civil rights and expunctions. Although the legislative history does not discuss the effect of state law restorations of civil rights on federal felons, it does dispel the govern-

---

**4.** The government does not argue that the Minnesota restoration of rights statute, Minn. Stat. § 609.165 (1990), was intended only to apply to persons convicted in Minnesota courts. The statute's requirement that the fact of restoration must be recited in the discharge would not apply to the case of a federal felon, since the state does not control the language of a federal felon's discharge. *See* Op.Minn. Att'y Gen. 68–h (Dec. 27, 1971) (section 609.165 applies to federal felons; language of discharge requirements nullified).

ment's argument that the last two sentences of section 921(a)(20) are parts of a single idea and that the term "restoration of civil rights" must be limited by the language in the preceding sentence about the "law of the jurisdiction in which the proceedings were held." *Accord Geyler*, 932 F.2d at 1335.[5]

The government's second argument is that section 925(c) was meant to be the sole process by which a federal felon could regain the right to possess a firearm. The government marshals no legislative history or other statutory argument to support this position, but simply argues that since section 925(c) exists, it must be an exclusive remedy. However, on its face the federal firearms statute sets out two different routes to restoration of firearms privileges. The government has shown no reason why sections 921(a)(20) and 925(c) cannot both exist as alternative routes for lifting firearms disabilities.

The government argues that a ruling in Edwards's favor would permit felons from around the nation to regain their firearms privileges by going to Minnesota just long enough to take a "civil rights bath." If this is so, it is Congress and the Minnesota legislature, not this court, that have drawn the water. But in any case, since Edwards was convicted in Minnesota, the situation the government fears may arise is not be-

fore us and we express no opinion as to what we might decide in a hypothetical fact situation.

We acknowledge that this is a difficult question of statutory construction, yet in the final instance we must remember that even if section 921(a)(20) could be read as the government argues, it would be, at most, ambiguous, and we would therefore be obliged to resolve the ambiguity in favor of the accused. *See Crandon v. United States*, 494 U.S. 152, 110 S.Ct. 997, 1001–02, 108 L.Ed.2d 132 (1990). Accordingly, we decline to adopt a construction that varies from the plain language of the statute in order to expand the reach of the statute's prohibition.

The judgment of the district court is affirmed.

---

**5.** The district court in this case based its decision largely on the idea that the reference to restoration of civil rights in section 921(a)(20) necessarily refers only to an action taken by the state, since "[i]t is the state, not the federal government, that defines and restores a person's civil rights, even in relationship to the federal government." 745 F.Supp. at 1479. This point was refined in an edifying footnote in *Geyler:*

> The statement in *Edwards* regarding the relation between federal and state law on the one hand and an individual's civil rights on the other is slightly overstated. In certain limited instances, federal law does affect the civil rights of convicted felons. Federal statutes prohibit persons convicted of specified crimes from holding federal office. *See, e.g.,* 18 U.S.C. § 2071(b) (whoever conceals, removes, or mutilates public records shall be disqualified from federal office). Federal law also requires persons convicted of specified offenses to forfeit public office. *See e.g.,* 18 U.S.C. § 1905 (whoever discloses confidential information while holding federal office shall

> forfeit that office). Also, as we have noted ... federal law can reinstate a federal defendant's civil rights as an incidental by-product of a pardon, expungement, or setting aside of a conviction.

> Presumably the states cannot restore the few civil rights that are taken away by the federal government. Nonetheless, the overwhelming majority of civil disabilities imposed upon the conviction of a felony— whether the conviction is state or federal—are imposed by state law. Moreover, the existence of a small number of federally imposed civil disabilities does not change the fact that federal and state law are not parallel regarding the restoration of rights. Although federal and state law each provides for pardons, expunctions, and the setting aside of a conviction, federal law does not provide a procedure whereby the federal government can simply restore civil rights without nullifying the conviction. State law, on the other hand, may do this for federal as well as state felons.

> 932 F.2d at 1334 n. 6.