972 F.2d 349
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Howard Jay KAPLAN, Defendant-Appellant.
 No. 91-2003.
 United States Court of Appeals, Sixth Circuit.
 July 17, 1992.
 
 Before RALPH B. GUY, Jr. and BOGGS, Circuit Judges, and RONEY, Senior Circuit Judge.*
 PER CURIAM.
 
 
 1
 Howard Kaplan appeals his convictions for being a felon in possession of a firearm and for making false statements in connection with the acquisition of firearms. He also appeals the district court's sentencing decision. For the reasons given below, we affirm both of Kaplan's convictions. However, we reverse the district court's sentencing decision and remand this case for a recalculation of Kaplan's sentence.
 
 
 2
 * On March 1, 1991, Kaplan waived his right to be charged by grand jury indictment. On the same day, the government filed a two-count information, charging Kaplan with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (Count I), and with making a false statement in connection with firearm acquisitions, in violation of 18 U.S.C. § 922(a)(6) (Count II). Kaplan entered a plea of guilty to both counts on March 20, 1991.
 
 
 3
 Prior to sentencing, Kaplan filed objections to the proposed calculation of his sentence under the guidelines. Specifically, Kaplan objected to the probation department's legal conclusion that the special offense characteristic reduction for possession of firearms for collection and sporting purposes, as authorized by U.S.S.G. § 2K2.1(b)(1), could never apply to a defendant convicted of being a felon in possession of a firearm. Kaplan contended that he was entitled to a sentence reduction because he possessed firearms as a collector and for the purposes of competitive sport shooting. On August 26, 1991, the United States District Court sentenced Kaplan to 27 months' imprisonment on each count, to run concurrently. The court also imposed a three-year term of supervised release and a $3,000 fine. The court refused to apply the sport/collection adjustment, stating that to find the adjustment applicable to a conviction under the felon in possession statute would "set the law on its ear." Additionally, the court found that target shooting at a gun range as practice for competitive matches did not qualify as a "lawful sporting purpose" and that Kaplan had not possessed the weapons solely for collection purposes.
 
 
 4
 This conviction arose from the investigation of a burglary at Kaplan's home. After he found that his house had been burglarized, Kaplan notified police. When the police arrived, they noted that Kaplan had numerous firearms displayed on the wall of a small, locked room in his home. The local authorities notified the Bureau of Alcohol, Tobacco, and Firearms (ATF). The ATF investigation revealed that Kaplan had prior felony convictions, the most recent of which had occurred in 1981. Using this information, the ATF obtained a warrant and searched Kaplan's home on May 10, 1990. During the search, the government photographed Kaplan's collection of weapons and memorabilia and seized numerous firearms from the secured room in his house. Those eighteen firearms, and the statements Kaplan made to acquire some of them, provided the basis for the information in this case.
 
 
 5
 The underlying conviction that served as the basis for the felon-in-possession charge in the information was another felon-in-possession conviction that occurred in federal court in Arizona in 1981. Thus, the predicate felony conviction here was another federal crime. Kaplan maintains that because his civil rights had been restored, the information charging him with being a felon in possession of a firearm in this case failed to allege a chargeable offense and, therefore, his conviction on Count I must be reversed. Kaplan also contends that since his civil rights had been restored and he had the right to possess firearms, Count II of the information, charging him with making false statements in the acquisition of firearms, also failed to allege a federal crime. He therefore urges this court to reverse his conviction on Count II. Finally, Kaplan challenges the district court's sentencing decision. Kaplan argues that the district court erred when it refused to apply the sport/collection adjustment to a felon-in-possession conviction and, further, when it refused to classify Kaplan's guns as part of collection and used exclusively for sporting purposes. We address each of these issues in turn.
 
 II
 The Felon-in-Possession Conviction
 
 6
 The main issue in this case centers on the felon-in-possession statute, 18 U.S.C. § 922(g). Section 922(g) provides, in pertinent part:
 
 
 7
 (g) It shall be unlawful for any person--
 
 
 8
 (1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year
 
 
 9
 to ship or transport in interstate or foreign commerce, or to possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped in interstate or foreign commerce.
 
 
 10
 The definition of a conviction for a "crime punishable by imprisonment for a term exceeding one year" is found at 18 U.S.C. § 921(a)(20):
 
 
 11
 What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which had been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.
 
 
 12
 So, if a defendant's civil rights have been restored, and his ability to possess firearms has not been expressly curtailed, then the felony may not be used as the predicate for a federal felon in possession charge.
 
 
 13
 This Circuit has recently been presented with issues under the felon-in-possession statute in United States v. Driscoll, No. 91-1583 (6th Cir. July 16, 1992) and United States v. Gilliam, 778 F.Supp. 935 (E.D.Mich.1991), appeal argued, March 23, 1992 (No. 91-2417). Both of those cases, however, involved state convictions as predicate acts for the felon-in-possession charges. The issue in both Driscoll and Gilliam was whether the state of Michigan had sufficiently restored the civil rights of the defendants such that their respective Michigan convictions could not serve as predicates for the federal felon-in-possession charges in a federal court in Michigan.
 
 
 14
 The issue in this case is different because the predicate act for the felon-in-possession conviction was a federal felon-in-possession conviction in a different state from the one in which the defendant was arrested. Since we are dealing with a conviction of a federal crime instead of a crime in certain state, the analysis of whether the defendant's civil rights have been restored becomes more complicated. We must determine where to look to answer the pivotal restoration of rights question. First, we must determine whether we should look to federal law or to the law of a particular state. Second, if we should look to state law, then the question becomes which state's law we should apply.
 
 
 15
 Kaplan's main argument is that the civil rights that he lost as a result of his 1981 conviction on felon in possession charges in a federal court in Arizona had since been restored by Michigan, his state of citizenship. He contends that since his civil rights had been restored for this conviction, then, according to 18 U.S.C. § 921(a)(20), the 1981 conviction could not serve as a predicate for the felon-in-possession charges in this case. Kaplan acknowledges that he can only prevail if state rather than federal law governs the restoration of rights issue and, further, only if the law of his current state of citizenship, Michigan, rather than the law of the state where he was convicted of the predicate offense, Arizona, applies. Finally, the court must also find that Michigan law, if it applies, actually restored Kaplan's civil rights and did not restrict his right to own firearms. In sum, the only way we can overturn Kaplan's felon-in-possession conviction is if we find that Michigan law applies and restores Kaplan's civil rights without restricting his right to own firearms.
 
 A. The Felon-in-Possession Statute
 
 16
 Until 1986, federal law proscribed the possession, shipment, transportation, and receipt of all firearms or ammunition by anyone who had been convicted "in any court" of a "crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. §§ 922(g)(1) & (h)(1) (1982) (emphasis added). In Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 111-20 (1983), the Supreme Court held that states had no power to exempt their citizens from the federal firearm ban by restoring the civil rights of felons or expunging their convictions. Congress responded to Dickerson by enacting the Firearm Owners Protection Act, Pub.L. No. 99-308, 100 Stat. 449 (1986), which modified federal firearms law effective November 15, 1986. The Firearm Owners Protection Act changed the law by empowering each state to exempt some or all of its convicted felons from the federal firearm ban.
 
 
 17
 This court has interpreted § 921(a)(20), the statutory language at issue in this case, on several occasions. Under § 921(a)(20), Congress empowered a state to shield its felons from future conviction for "felon in possession." According to § 921(a)(20):
 
 
 18
 What constitutes a conviction for such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which had been expunged, or set aside or for which a person has been pardoned or had his civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms. (Emphasis added).
 
 
 19
 In this case, as in most, we are not dealing with a predicate conviction that has been pardoned, expunged, or set aside. We must, therefore, engage in a two-step analysis. First, we must determine if Kaplan has had his civil rights restored with regard to the predicate conviction. If his civil rights have been restored, then his conviction cannot serve as the predicate for a felon-in-possession charge unless the state had expressly restricted his right to possess firearms.
 
 
 20
 Our jurisprudence sets up a test for determining if a defendant's civil rights have been restored. State weapons restrictions on felons are not a factor in the first step of the civil rights restoration analysis. However, under the second step, such restrictions can nullify the effect of the civil rights restoration and restore the federal government's ability to use the particular offense as a predicate for a felon-in-possession prosecution. In other words, the purpose of the amendment of the federal felon-in-possession statute was to return to the states the decision of whether or not to allow their felons to carry weapons. If the state restores civil rights, and does not restrict weapons possession, then that state's felons will not be subject to prosecution under the federal felon-in-possession statute.
 
 
 21
 The main Sixth Circuit cases interpreting § 921(a)(20) are United States v. Cassidy, 899 F.2d 543 (6th Cir.1990) and United States v. Breckenridge, 899 F.2d 540 (6th Cir.1990). In Cassidy, 899 F.2d at 546, this court held:
 
 
 22
 Considering the definition as a whole, it is clear that Congress intended the courts to refer to state law to determine whether an individual should be subject to federal firearms disabilities by virtue of a criminal conviction. If state law has restored civil rights to a felon, without expressly limiting the felon's firearms privileges, the felon is not subject to federal firearms disabilities. This is the clear and unambiguous intent of Congress as expressed in section 921(a)(20).
 
 
 23
 So, a court must look at the whole of the law in the jurisdiction where the proceeding took place to determine whether the conviction falls within the statutory definition necessary to serve as a predicate conviction for a felon-in-possession charge. We have also held that in determining whether a state has restored the civil rights of a felon, we must look to the whole of state law to see if the state has restored the right to vote, to serve on a jury, and to hold public office. Id. at 549. If these rights have been restored, then the state has "restored civil rights" for purposes of § 921(a)(20). If civil rights have been restored in this way, then courts must look to the whole of state law to determine if the state entitles felons "to exercise the privileges of shipping, transporting, possessing or receiving a firearm." Ibid.
 
 
 24
 B. A Federal Felony as the Predicate for a Federal Felon in Possession Conviction
 
 
 25
 As stated, this case is unique because it involves a federal crime as the predicate offense for Kaplan's conviction. This present's two questions. First, do we now apply state law or federal law to determine if the Kaplan's civil rights have been restored? Second, if state law applies, then which state's law? There have been no Sixth Circuit cases directly on point. Two other circuits, however, have addressed the first question.
 
 
 26
 A panel of the Ninth Circuit, including Judge Lively of this Circuit sitting by designation, partially addressed this issue in United States v. Geyler, 932 F.2d 1330 (9th Cir.1991). In Geyler, the defendant was convicted in federal court in Arizona of the federal felony of misprison of a felony. Geyler received an absolute discharge from imprisonment after serving his sentence and Arizona law granted him an automatic restoration of civil rights. Geyler was later caught holding firearms at his house in Arizona and was convicted by a federal court in Arizona of a violation of the federal felon-in-possession law. The Ninth Circuit held that the inquiry as to whether Geyler's civil rights had been restored was governed by state law, even when the predicate felony was a federal crime.
 
 
 27
 In Geyler, the government relied on the first sentence of § 921(a)(20), which refers to the law of the prosecuting jurisdiction, and argued that only action taken by the federal government, and not by the states, could nullify the effect of a prior federal felony conviction. The Ninth Circuit rejected this contention. The court began by noting that under § 921(a)(20), a conviction cannot serve as a predicate offense if has been expunged or set aside or pardoned or if civil rights have been restored. When a conviction is nullified, set aside, or pardoned, the conviction itself is nullified. However, when civil rights are restored, the sole objective is to restore rights and the conviction itself is not affected. According to the Geyler court, 932 F.2d at 1332:
 
 
 28
 The specific reference in § 921(a)(20) to the restoration procedure indicates that Congress intended to recognize that independent process as a separate basis for treating a conviction as a non-conviction. Moreover, the inclusion in the statute of the restoration procedure could not have been accidental. The procedure is widely used, and Congress was certainly aware of it.
 
 
 29
 The court then pointed out that both state and federal law contain procedures for the first three procedures set out in the statute: expungement, setting aside of a conviction, and pardon. However, the court found no established federal procedure for the restoration of civil rights. The court held as follows:
 
 
 30
 The restoration of civil rights, however, is an entirely different matter. State law deprives felons, both state and federal, of their civil rights initially.... And only the states provide a procedure whereby following completion of a felon's sentence his conviction remains intact but his civil rights may be restored. Unlike any of the other procedures listed in § 921(a)(20), a state's restoration of civil rights is available to all felons.
 
 
 31
 Because there is no federal procedure for restoring civil rights to a federal felon, Congress could not have expected that the federal government would perform this function. The reference in § 921(a)(20) to the restoration of civil rights must be to the state procedure.
 
 
 32
 Id. at 1333. The court also held that if Congress had meant to limit the benefits of a state's restoration of rights to state felons only, then it would have expressly done so in the statutory language. Instead, § 921(a)(20) provides that "any conviction ... for which a person ... has had civil rights restored shall not be considered a conviction for purposes of this chapter." So, the court held that according to the plain language of the statute, "a federal felon whose civil rights are restored pursuant to state law, like a state's felon whose rights are so restored, is no longer considered as having been 'convicted' for purposes of the federal firearms laws" Id.
 
 
 33
 The court's discussion of the government's argument, based on the first sentence of the definitional provision of § 921(a)(20), informs the next issue, the choice of which state's law applies. As stated above, in Geyler the government argued under the first sentence that what constitutes a conviction for purposes of the felon-in-possession statute "shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." The government contended that this also applied to the next sentence and, therefore, civil rights lost through federal crimes could only be restored by the federal government. In rejecting this contention, the court held that the second sentence was separate from the first because it deals with an entirely different set of circumstances:
 
 
 34
 The two sentences relied on by the government pertain to two entirely different sets of circumstances. The first sentence addresses the question of what constitutes a conviction; this is, quite simply, answered by the law of the prosecuting jurisdiction, and Congress made it plain that it desired that result. The second sentence governs the effect of post-conviction events. Under the provisions of the second sentence, once the law of the prosecuting jurisdiction has confirmed that a conviction exists, there are four ways in which the effects of the conviction may be avoided for purposes of the federal firearms laws.... As we have explained, the jurisdictional reach of federal and state law is not the same with respect to each of these procedures. Specifically, the restoration of rights, unlike the other procedures, is carried out only by the states, and it is the only procedure under which one jurisdiction may grant relief to persons convicted in the other.
 
 
 35
 Id. at 1335. This statement has implications for our choice-of-law principle. If we apply state law, the next question we face is whether to apply the law of the state where the conviction occurred or the state of the defendant's citizenship. The first sentence of the definitional section of § 921(a)(20) would seemingly support applying the law of the state of conviction. However, Geyler suggests otherwise.
 
 
 36
 The Eighth Circuit, in United States v. Edwards, 946 F.2d 1347 (8th Cir.1991), agreed with the Geyler court. More importantly, perhaps, the Edwards court adopted the same characterization of the independence of the two sentences in § 921(a)(20). In Edwards, 946 F.2d at 1350, the court also stated:
 
 
 37
 The government argues that a ruling in Edwards's favor would permit felons from around the nation to regain their firearms privileges by going to Minnesota long enough to take a "civil rights bath" If this is so, it is Congress and the Minnesota legislature, not this court, that have drawn the water.
 
 
 38
 This again suggests that the state of citizenship, and not the state where the convicting federal court was located, provides the relevant state law for the restoration of civil rights determination. In fact, the district court in Edwards expressly stated that courts should apply the law of the state where the felon is a citizen, and this language was quoted by the Ninth Circuit in Geyler:
 
 
 39
 While the law of the jurisdiction where the proceeding is held determines what is a conviction and whether it has been set aside, expunged, or subject to a pardon, the law of the state where a person is a citizen governs that person's civil rights.
 
 
 40
 Geyler, 932 F.2d at 1334 (quoting United States v. Edwards, 745 F.Supp. 1477, 1479 (D.Minn.1990)).
 
 C. Choice of Law
 
 41
 In its brief in this case, the government does not concede that state and not federal law applies in the restoration of rights determination. The government, however, does not really argue the point, but merely contends that application of the appropriate state law in this case will not alter the outcome. The government contends that since Kaplan was convicted of the predicate felony in federal court in Arizona, Arizona law governs the restoration decision. In Arizona, the civil rights of anyone who is convicted of a felony are automatically suspended. However, those rights are restored for first-time offenders "[u]pon completion of the term of probation, or upon absolute discharge from imprisonment." Ariz.Rev.Stat.Ann. § 13-912(A). However, Kaplan was a multiple offender, so the following Arizona restoration statute applies:
 
 
 42
 Upon proper application, a person who has been convicted of two or more felonies who has received an absolute discharge from imprisonment in a federal prison may have any civil rights which were lost or suspended by his conviction restored by the presiding judge of the superior court in the county in which he now resides.
 
 
 43
 Ariz.Rev.Stat.Ann. § 13-910(A). The government contends that since Kaplan did not file the required application, his civil rights were never restored in Arizona.
 
 
 44
 Further, the government argues that even if Kaplan is treated as a first-time offender, that restoration statute does not apply to a felon's ability to own guns. A change in the statute made in 1988 requires a special application to be made to the court for a felon to have his gun rights restored. Since Kaplan did not make this application in Arizona, says the government, his right to possess weapons was restricted entirely.
 
 
 45
 Kaplan concedes that he loses this issue if Arizona law governs, but argues that Michigan law applies to this case because he is a citizen of Michigan. He relies on the holdings in Geyler and Edwards and urges this court to adopt similar reasoning. Kaplan contends that the first sentence of the statutory language is independent of the second sentence and urges that the state of citizenship is the state that can restore the rights of its convicted felons, even if those felonies arose in federal court in another state. However, the direct application of the relevant language of Geyler or Edwards to this case is problematic. Neither case involved a choice between states, but addressed only the issue of state versus federal law, since the state of the predicate conviction was identical to the state of citizenship of the defendants in those cases. While this issue was not directly before those courts, the language in the opinions certainly indicates that the law of the state of citizenship applies to the restoration determination. On the other hand, in both Breckenridge, 899 F.2d at 542, and Cassidy, 899 F.2d at 549, we stated that we must look to the whole of the state law "of the state of conviction" to determine whether the convicted felon is entitled to vote, serve on a jury, hold public office, and possess firearms. However, this issue was not directly before either of those panels of the Sixth Circuit, so any statements made addressing it could be fairly classified as dicta. The resolution of this choice of law question, then, seemingly turns on what precedential value is due to the relevant statements in Breckenridge and Cassidy.
 
 D. Michigan Law
 
 46
 The resolution of this case is made substantially less difficult by the fact that Kaplan admits that he can only prevail if Michigan law applies. He argues that Michigan has restored his civil rights. However, assuming, without deciding, that Michigan law applies, Kaplan still cannot successfully argue for the reversal of his felon in possession conviction in this case. In the recent opinion in Driscoll, a panel of this Circuit held that Michigan has not restored the civil rights of its felons for purposes of the federal felon-in-possession statute. Driscoll, slip op. at 12. In doing so, the Driscoll court expressly rejected the contrary conclusion reached by the Ninth Circuit in United States v. Dahms, 938 F.2d 131 (9th Cir.1991). Driscoll, slip op. at 2.
 
 
 47
 It is clear that, in Michigan, Kaplan's rights to vote and run for public office have been restored. The only question, then, is whether his right to serve on a jury has also been restored. Once a felon's sentence is complete, there is no statute prohibiting that individual from sitting on a jury. There are however, court rules in Michigan that allow counsel, or a court sua sponte, to exclude felons from the jury through challenges for cause. In Driscoll, we held that those rules meant that a felon did not have the right to sit on a jury in Michigan and, therefore, that Michigan had not restored the civil rights of felons for purposes of § 921(a)(20). Id. at 12.[1]
 
 
 48
 To summarize, if either federal law or Arizona law applies to the restoration-of-rights issue in this case, Kaplan admits that he loses his appeal. Neither the federal government nor the state of Arizona has restored Kaplan's civil rights. In addition, even if Michigan law applies, Kaplan cannot prevail. So, even under Kaplan's best-case scenario in which Michigan law applies to the restoration-of-rights question, we would affirm his conviction under the felon-in-possession statute. Therefore, we need not decide any of the choice-of-law questions presented in this case to affirm Kaplan's conviction. We do not decide whether federal or state law would apply to the restoration of rights question in a case such as this. Nor do we announce any choice-of-law principle for deciding which state's law applies, if any. We merely affirm Kaplan's conviction, which is required under any possible resolution of these issues. Under the "rule of parsimony," then, we leave these questions for another day. We will resolve them when the facts of a particular case presented to us compels their resolution.
 
 III
 The False Statement Conviction
 
 49
 Count II of the information alleged that on several occasions between July 18, 1988 and May 3, 1989, Kaplan represented that he had not been convicted of any crime punishable by imprisonment for a term exceeding one year. The government alleges that he did so on Bureau of Alcohol, Tobacco, and Firearms Forms 4473, which gun purchasers are required to fill out. Section 922(a)(6) of Title 18 makes it unlawful for a person to make a false statement in relation to a gun purchase. Under the statute, the government must prove that the defendant knowingly made false or fictitious statements intended or likely to deceive the firearms dealers with respect to any fact material to the lawfulness of the sale.
 
 
 50
 Question 8b of the Form 4473 is the relevant question in this case. Prior to amendment, question 8b asked:
 
 
 51
 Have you been convicted in any court of a crime punishable by imprisonment for a term exceeding one year? (Note: The actual sentence given by the judge does not matter--a yes answer is necessary if the judge could have given a sentence of more than one year. Also, a yes answer is required if a conviction has been discharged, set aside, or dismissed pursuant to an expungement or rehabilitation statute....)
 
 
 52
 The question was later amended to reflect the 1986 change in § 921(a)(20), and stated that a yes answer was not required if the conviction had been expunged, set aside, or pardoned, or if civil rights had been restored. Kaplan contends that since the charged offenses in count II all occurred well after 1986, he is not guilty of making a false statement because his civil rights had been restored by Michigan. He says that his "no" answer to question 8b was no longer false after the 1986 change in the law.
 
 
 53
 However, since Kaplan's civil rights were not in fact restored, even by the state of Michigan, his statements to the contrary on either the original or amended ATF forms were clearly false. We therefore affirm Kaplan's conviction for making false statements in connection with the acquisition of firearms, in violation of 18 U.S.C. § 922(a)(6).
 
 IV
 The Sentencing Issue
 
 54
 In sentencing Kaplan, the district court held that the offense level reduction in cases where the defendant possessed all ammunition and firearms solely for lawful sporting purposes or a part of a collection (U.S.S.G. § 2K2.1(b)(2)) could not apply to a conviction for being a felon in possession of a firearm. We review this issue of law de novo. The government concedes that the district court erred in concluding that this reduction could not apply as a matter of law to the case at bar. The case law supports this concession. United States v. Wilson, 878 F.2d 921, 924 (6th Cir.1989). However, the government claims that the district court also made a factual finding that it would be inappropriate to grant this adjustment under the facts of this case and that this factual finding must be affirmed unless clearly erroneous.
 
 
 55
 Kaplan argues that the findings of the court were not "factual" at all but were based on legal misperceptions. The court stated that shooting the gun at ranges in preparation for competitive shooting matches is not a lawful sporting purpose. Further, the court found that the firearms did not constitute a collection for purposes of the adjustment because the display included weapons and memorabilia that were not for sporting purposes. Kaplan contends that these are fundamentally errant legal determinations of the definitions of the guideline terms of "sport" and "collection" and, therefore, are subject to de novo review. Kaplan maintains that the district court's narrow definitions of those words were wrong and that his collection of weapons and his use of those weapons for sport entitle him to the adjustment.
 
 U.S.S.G. § 2K2.1(b)(2) provides:
 
 56
 (2) If the defendant ... possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level 6.
 
 
 57
 According to Application Note 10 to this guideline, whether the defendant possessed the firearms and ammunition solely for "lawful sporting purposes and collection" is determined by the relevant surrounding circumstances including the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history, and the extent to which possession was restricted by local law.
 
 
 58
 The district court in this case found that target shooting at gun ranges in preparation for shooting matches is not a lawful sporting purpose. Further, the court found that it was not a "collection" because the display of firearms included memorabilia and other weapons. These are not technically factual findings, but constitute a mistaken application of a legal rule, which we review de novo.
 
 
 59
 Kaplan had a large collection of firearms, which he displayed on the walls of a locked room in his home. The collection contained other law enforcement and paramilitary memorabilia. None of the weapons were loaded and no other weapons were found anywhere else in Kaplan's home. We disagree with the district court that the fact that the guns were displayed with other memorabilia indicates that they do not qualify as a "collection" for purposes of this adjustment. On the contrary, the various posters, patches and other various weapons support Kaplan's contention that he maintained these weapons as part of a collection.
 
 
 60
 Further, the district court's finding that practicing at a gun range in preparation for competitive shooting matches did not constitute a "lawful sporting purpose" was also an erroneous application of § 2K2.1(b)(2). If this gun range activity was indeed practice for a lawful sport-shooting purpose, it too constitutes a lawful sporting purpose.
 
 
 61
 We therefore reverse the district court's decision refusing, as a matter of law, to apply § 2K2.1(b)(2) to felon-in-possession cases. In addition, we reject the district court's proffered reasons for refusing to apply the reduction to these facts, as those reasons are simply mistaken legal interpretations of the applicable guideline. We remand this case to the district court, so that it may reconsider the question whether the sport/collection reduction applies to the facts of this case in light of the correct legal standard explicated herein. If the district court chooses to deny the reduction in this case, it must do so for reasons other than those that we have found illegitimate.
 
 V
 
 62
 In sum, we AFFIRM Kaplan's convictions for being a felon in possession of a firearm and for making false statements in connection with the acquisition of firearms. Further, we REVERSE the district court's refusal to apply the sport/collection adjustment to this case. We therefore REMAND this case to the district court for a reconsideration of Kaplan's sentence. The district court is ordered to render a decision on the application of the sport/collection adjustment based on the facts of this case and consistent with this opinion.
 
 
 
 *
 Honorable Paul H. Roney, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation
 
 
 [1]
 Since Michigan has not restored Kaplan's civil rights, we need not proceed to the second step of the statutory analysis, the issue of whether Michigan has restricted Kaplan's right to possess firearms. In any event, the Michigan provision in effect at the time of Kaplan's plea and sentencing only restricted the possession of pistols for people who had been convicted of or incarcerated due to a felony "in the past eight years." Mich.Comp.Laws Ann. §§ 28.422(1) & (3)(c). Kaplan was released from custody in December 1981, so the eight-year period expired for Kaplan in 1989. This Michigan law was changed two days after Kaplan was sentenced, so the eight-year limit still applies in this case. It seems, then, that Michigan had not placed restrictions on Kaplan's ability to own a gun. None of this is relevant, however, since Michigan had not restored Kaplan's civil rights