┌─────────────────────────────────────┐
│   **NONPRECEDENTIAL DISPOSITION**    │
│     To be cited only in accordance with     │
│          Fed. R. App. P. 32.1        │
└─────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 22, 2008
Decided November 12, 2009 [*]

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 07-3407

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     *Plaintiff-Appellee,* <br><br>     *v.* <br><br> JAMES E. SCHNELL, <br>     *Defendant-Appellant.* | Appeal from the United States District Court for the Southern District of Indiana, Evansville Division. <br><br> No. 3:06CR00027-001 <br><br> Richard L. Young, <br> *Judge*. |

**O R D E R**

In 2005 investigators found a stockpile of nearly 200 guns and 37,000 rounds of ammunition belonging to James Schnell, a two-time federal felon. Schnell was convicted on two counts of possession of a firearm by a felon. *See* 18 U.S.C. § 922(g)(1). On appeal he argues that his two prior convictions did not qualify as predicates in a prosecution under

---

[*] After hearing oral arguments on April 22, 2008, we put this case on hold pending our decision in *United States v. Buchmeier, 581 F.3d 561 (7th Cir. 2009). Buchmeier* was decided on September 10, 2009.

§ 922(g)(1) because, after each, his probation officer gave him an "information sheet" which led him to believe that the conviction did not result in the loss of civil rights. The two information sheets, Schnell insists, "mousetrapped" him into believing that the related conviction did not preclude him from possessing firearms and, thus, neither prior offense resulted in a "conviction" that can count against him.

Schnell was convicted in 1984 of filing a false income tax return, a felony under 26 U.S.C. § 7206(1), for which he was sentenced to four years of probation. Soon after his probation began, Schnell received a form from his probation officer, Dennis Duvall. The form is captioned

INFORMATION SHEET<br>
PROBATIONERS, PAROLEES, AND MANDATORY RELEASEES

and provides guidance in 10 categories, including the operating hours of the probation office, Schnell's obligation to give a photo of himself to Duvall, the method and place to make payments toward any fine or restitution, restrictions on travel and associating with anyone having a criminal record, how to get an Indiana driver's license while on supervision, and so on. The ninth category states in its entirety:

> CIVIL RIGHTS: You have lost no civil rights (i.e. right to vote in state, local, or national elections, purchase property, etc.) unless your offense is such that the penalty contains loss of civil rights; such as treason, espionage, etc.

Introductory language in the information sheet encouraged Schnell to keep his conditions of probation and other related paperwork together in one place.

Schnell's probation was not successful. It was revoked in 1987 after he refused to file income tax returns for 1984 and 1985, and he was sentenced to 90 days' imprisonment. *United States v. Schnell*, 982 F.2d 216, 217 (7th Cir. 1992). Schnell may have received an identical information sheet after his release from custody; whether he did is disputed, but the district court assumed that he did, and so shall we.

Four years passed uneventfully, but in 1991 Schnell was caught selling firearms and pleaded guilty to possession of a firearm by a felon in violation of § 922(g)(1). He was sentenced to a year in prison and three years of supervised release.

A year later, just a few days before he completed his prison sentence and started serving his term of supervised release, Schnell received another identical information sheet from probation officer Duvall. As before, the document includes the line about "civil rights": "You have lost no civil rights (i.e. right to vote in state, local, or national elections,

purchase property, etc.) unless your offense is such that the penalty contains loss of civil rights; such as treason, espionage, etc."

Schnell completed his term of supervised release and did not land in federal court again for more than a decade. Then in March 2005 a local detective visited Schnell's home in Jasper, Indiana, to discuss a rumor that Schnell was selling guns out of his home. Schnell revealed that he had recently sold a few firearms to acquaintances and had approximately six guns in his house. The detective asked if Schnell "had anything decent," such as a Heckler & Koch or Glock handgun. Schnell replied that he had a "large frame" Glock.

The detective immediately reported her conversation with Schnell to the Evansville, Indiana, office of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). A search of ATF files revealed the 1990 investigation that had led to Schnell's first conviction under § 922(g)(1). ATF agents also learned that Schnell had not sought or received any restoration of federal firearms privileges following that conviction. The United States Pardon Attorney also certified to the ATF that Schnell had never applied for or received a pardon for any federal offense. Confident that Schnell could not lawfully possess firearms, ATF agents obtained a warrant and searched his home. They discovered 92 guns and roughly 37,000 rounds of ammunition. Further investigation uncovered a second weapons cache of 104 firearms that Schnell was storing at a friend's house.

Four months later a grand jury charged Schnell with three counts of possession of a firearm or ammunition by a felon. The indictment specifies as predicate convictions both of Schnell's prior federal felonies. Schnell responded by moving to dismiss the indictment on the ground that he did not have a felony "conviction" for purposes of § 922(g)(1). Under 18 U.S.C. § 921(a)(20), which defines what qualifies as a "conviction" for purposes of § 922(g)(1), any prior conviction "for which a person has . . . had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." Schnell reasoned that the information sheets he received following his felony convictions communicated that his civil rights had been restored *in toto* and did not include any express notice of a firearms prohibition. Moreover, according to Schnell, the restoration itself—which the information sheets purportedly announced but did not effect—had occurred automatically by operation of Indiana statutes. Therefore, Schnell argued, he was no longer a felon (at least for purposes of § 922(g)(1)) when ATF agents knocked on his door in 2005.

The district court disagreed with Schnell and denied the motion. First, the court recognized that, under § 921(a)(20), whether a felon had his civil rights restored after a federal conviction is a matter of federal law. *See* 18 U.S.C. § 921(a)(20) ("What constitutes a

conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held."); *Beecham v. United States*, 511 U.S. 368, 370-74 (1994). Accordingly, the court reasoned, Indiana law did not speak to Schnell's contention that he did not have a qualifying conviction. Turning then to federal law, the court analyzed Schnell's status in 2005 and concluded that indeed he was a felon:

> Neither the tax conviction nor the felon in possession has been expunged or set aside and Schnell has not been pardoned with respect to those convictions. *See* § 921(a)(20) (providing that a "conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored" does not impose a firearm disability). In addition, Schnell has neither sought nor received the restoration of his civil rights through the procedure established in 18 U.S.C. § 925(c).

> Schnell argues that forms signed and issued to him by the Probation Department restored his civil rights and his right to possess firearms. The court disagrees that this was the effect of those forms.

A jury later found Schnell guilty on all three counts, but after the verdicts the district court dismissed one count on double-jeopardy grounds. For the remaining two counts Schnell received concurrent sentences of 60 months' imprisonment.

Schnell renews his argument that he is not a felon for purposes of § 922(g)(1) because, he contends, the information sheets he received from his probation officer evidenced the restoration of his civil rights under § 921(a)(20) but did not warn him of any firearms disabilities. We review the denial of a motion to dismiss an indictment for clear error on questions of fact and de novo on questions of law. *United States v. Greve*, 490 F.3d 566, 570 (7th Cir. 2007).

Section 921(a)(20) provides three methods for a state or the federal government to forgive a felony so that the conviction cannot later give rise to a prosecution under § 922(g)(1): pardon, expungement, or a restoration of "civil rights" (so long as the government action is not qualified by an express prohibition on possessing firearms). Congress did not define "civil rights" for purposes of applying § 921(a)(20), but we have held that the statute contemplates three core civil rights: the right to vote, the right to hold office, and the right to serve on a jury. *United States v. Gillaum*, 372 F.3d 848, 860 (7th Cir. 2004); *United States v. Williams*, 128 F.3d 1128, 1134 (7th Cir. 1997). Only the jurisdiction that obtained a conviction may forgive that conviction for purposes of § 921(a)(20), so only the federal government may forgive a federal felony. *See Beecham*, 511 U.S. at 370-74; *United States v. Thompson*, 117 F.3d 1033, 1035 (7th Cir. 1997). Thus, if a state restores a felon's civil

rights, that individual's firearms restrictions "imposed as a result of . . . *federal* convictions" remain intact. *Beecham*, 511 U.S. at 370-71.

Restoration of civil rights may occur by operation of statute or, as we recently reaffirmed, as an unintended consequence of a government-issued certificate that communicates restoration but fails to mention a prohibition against firearm possession. *See Buchmeier v. United States*, 581 F.3d 561, 567 (7th Cir. 2009) (en banc); *Gillaum*, 372 F.3d at 860; *see also United States v. Williams*, 128 F.3d 1128, 1134 (7th Cir. 1997); *United States v. Glaser*, 14 F.3d 1213, 1218 (7th Cir. 1994). When the convicting jurisdiction has given the defendant a certificate that speaks to the restoration of rights, the inquiry is limited to the content of that document. *See Gillaum*, 372 F.3d at 860; *Glaser*, 14 F.3d at 1218. The question in such cases is whether the language of the certificate "mousetrapped" the defendant, *see United States v. Erwin*, 902 F.2d 510, 512 (7th Cir. 1990), or, in other words, whether the certificate caused "the misapprehension that civil rights have been restored to the degree that will permit [the defendant] to possess firearms," *see United States v. Vitrano*, 405 F.3d 506, 510 (7th Cir. 2005). It does not matter whether the certificate is accurate if it is also incomplete:

> If the state sends the felon a piece of paper implying that he is no longer "convicted" and that *all* civil rights have been restored, a reservation in a corner of the state's penal code can not be the basis of a federal prosecution. A state must tell the felon point blank that weapons are not kosher.

*Erwin*, 902 F.2d at 512-13. Schnell insists that he was mousetrapped into believing that his civil rights had been restored under federal *and* state law[1] and thus he could lawfully possess firearms. Although the circuits have split on whether this court's "anti-mousetrapping" doctrine is consistent with § 921(a)(20), *see Logan v. United Sates*, 552 U.S. 23, 33 n.4 (2007) (recognizing circuit split), we recently reaffirmed our holding that the statute "protects people who might be snookered, by material omissions from government documents, into believing that they are *entitled* to possess firearms," *Buchmeier*, 581 F.3d at 566. And that's where Schnell's argument falls apart.

---

[1] Schnell acknowledges the holding of *Beecham*, 511 U.S. at 370-74, but insists that *Beecham* is not "retroactive" and does not control in cases where the questioned document was issued before that 1994 decision. He is mistaken. In *Beecham* the Supreme Court clarified the meaning of an existing statute. The decision did not work a change in the statute or announce new law.

Schnell asserts that the information sheets he received from his probation officer fooled him into believing that he was entitled to possess a firearm, but no reasonable person could read the documents that way.  Rather than receiving a pardon or discharge certificate, Schnell was given a photocopy of a generic list of dos and don'ts that every federal defendant in the Southern District of Indiana receives.  It makes no reference to Schnell or to his convictions.  The two-page document spells out a number of continuing *restrictions* that a defendant faces when beginning a phase of punishment—supervision outside of prison—including restrictions on travel, association, and auto licensing.  The sheet also warns defendants that while under supervision they are subject to search by their probation officer at any time.  The single line concerned with civil rights simply suggests—apparently incorrectly, *see* 28 U.S.C. § 1865(b)(5) —that the defendant has not necessarily lost any civil rights, including, for example, the rights to vote and purchase property.  Although a certificate restoring civil rights need not designate a particular person to be effective, *see Caron v. United States*, 524 U.S. 308, 313 (1998), it is inconceivable that every defendant beginning supervision imposed as punishment for a federal crime would be immunized from the total ban on firearm possession contemplated by § 922(g) simply by virtue of this informal document that plainly was designed to summarize and highlight restrictions.

Moreover, the information sheet explicitly supplements additional paperwork.  The opening paragraph tells the defendant that he should keep the information sheet together with his "conditions of probation and all other necessary court forms, parole forms, etc."  Those court forms—forms that must be read in conjunction with the information sheet—include standard conditions instructing every defendant on probation or supervised release, Schnell included, that firearm possession is prohibited.  *See* 18 U.S.C. §§ 3565(b), 3583(g).  Our mousetrapping doctrine envisions a felon who mistakenly assumes that possession of firearms is one of the civil rights that have been restored.  *See Vitrano*, 405 F.3d at 510.  Schnell could not possibly have concluded that the line about civil rights in the information sheets gave him permission to have guns because those same sheets remind him about other documents that tell him that he could not possess firearms.  Schnell could not have been fooled because the federal government told him "point blank that weapons are not kosher."  *See Erwin*, 902 F.2d at 513.

In any event, even if an informal paper typed up by the probation office can constitute a "writing purporting to restore all civil rights," *see Glaser*, 14 F.3d at 1218-19, *this* information sheet is not a "restoration."  If Schnell's interpretation prevails—that the information sheet truly reflects that he never *lost* any civil rights—then he cannot seek the protection of § 921(a)(20): application of that section turns on whether civil rights have been "restored,"and the Supreme Court has held that "the words 'civil rights restored' do not cover the case of an offender who lost no civil rights."  *Logan*, 552 U.S. at 37.

Schnell is thus wrong in arguing that his case is similar to our decision in *Buchmeier*. The only similarity is that he and Buchmeier both received poorly worded government notices. Buchmeier received, after completing his sentence and being released from supervision, a discharge certificate telling him that state authorities were "pleased to inform you of the restoration of your right to vote and to hold offices created under the constitution of the state of Illinois." We concluded that this notice could mislead a former prisoner into believing that the right to possess firearms had been restored because the document specifically restored each of the three major civil rights that had been taken away—in Buchmeier's case the right to vote and hold office—without also mentioning a continuing ban on firearms possession. In Schnell's case, by contrast, the information sheets were provided at the beginning of his terms of probation or supervised release, he was on notice that he could not possess firearms during his term of supervision because his criminal judgment explicitly said so, and the information sheets did not purport to restore anything.

Schnell's only remaining argument is that his first conviction for filing a false tax return is not an appropriate predicate for § 922(g)(1) because it falls within the trade-offense exception of § 921(a)(20). *See* 18 U.S.C. § 921(a)(20)(A) ("The term 'crime punishable by imprisonment for a term exceeding one year' does not include . . . any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices . . . ."). His argument is frivolous. Filing a false income tax return is not akin to an unfair trade practice. *See, e.g., United States v. Stanko*, 491 F.3d 408, 415-16 (8th Cir. 2007) (construing § 921(a)(20)(A) exceptions to include only crimes that adversely affect competitors or consumers); *Dreher v. United States ex rel. U.S. Bureau of Alcohol, Tobacco & Firearms*, 115 F.3d 330, 332-33 (5th Cir. 1997) (same); *United States v. Meldish*, 722 F.2d 26, 27-28 (2d Cir. 1983) (same); *see also United States v. Kruckel*, No. 92-611(JBS), 1993 WL 765648 at *16 (D.N.J. Aug. 13, 1993) (concluding tax offenses are not within the scope of § 921(a)(20)(A)). The judgment of the district court is AFFIRMED.